United States District Court
Southern District of Texas
**ENTERED**
December 23, 2016
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **CIRO BUENTELLO &** | § | |
| **RIGOBERTO DOMINGUEZ,** | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. B-15-206 |
| | § | |
| **FERRELLGAS, INC.,** | § | |
|     Defendant. | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On November 22, 2015, Plaintiffs Ciro Buentello ("Buentello") and Rigoberto Dominguez ("Dominguez") filed a complaint against Defendant Ferrellgas, Inc. ("Ferrellgas"). Dkt. No. 1. Buentello and Dominguez allege that Ferrellgas failed to properly pay them for the overtime hours they worked, in violation of the Fair Labor Standards Act ("FLSA").

On September 13, 2016, Ferrellgas filed a motion for summary judgment.[1] Dkt. No. 29. On December 2, 2016, Buentello and Dominguez timely filed a response. Dkt. No. 36.

After reviewing the record and the relevant case law, it is recommended that the motion for summary judgment be denied. There is a genuine dispute of material fact as to whether Buentello and Dominguez were paid for all of the hours worked they worked at Ferrellgas.

## I. Background

### A. Factual Background

Buentello and Dominguez worked as delivery drivers for Ferrellgas. Dkt. No. 36-1, p. 7. They delivered propane tanks and cages to commercial and residential customers. Id. Buentello and Dominguez were paid hourly wages. Id.

---

[1] Defendant had previously filed a motion for summary judgment, but that motion was withdrawn. Dkt. Nos. 15, 28.

Ferrellgas provided its drivers with a mobile device that tracked the driver's time worked. Dkt. No. 36-1, pp. 7-8. The drivers would log in to the device at the beginning of their shift and it would list the customers that they needed to service that particular day. Id. The mobile device kept track of the time from when the driver logged in until he logged out at the end of the day. Id. It also timed how long the driver spent on any particular delivery. Id. Ferrellgas would grade drivers based on how long they spent on their deliveries. Id. Each driver was required to take a one hour unpaid lunch break each day. Dkt. No. 36-3, pp. 6-7.

Buentello testified that they were expected to log out for their lunch break, regardless of whether they actually worked through their lunch. Dkt. No. 36-1, p. 8. Buentello testified that he spoke with the supervisor, Allen Huntington, about the fact that he had so many customers that he wasn't able to take his lunch breaks. Dkt. No. 36-1, pp. 8-9. Huntington would respond that they had "to hurry up and finish the customers." Id. Buentello testified that Huntington would tell him, "Well, you know, if you didn't get a lunch, you didn't get a lunch." Id, p. 12. Dominguez testified that he "never" took lunch breaks because he was "given so many customers per day, and if you would take lunch, you wouldn't be able to finish them." Dkt. No. 36-2, p. 10.

When asked if Huntington ever told him to "falsely make entries in the handheld devices," Buentello responded that Huntington "would do them himself all the time." Dkt. No. 36-1, pp. 9-10. He explained that Huntington would artificially hold the drivers to 40 hours in the payroll records, even if they had worked in excess of 40 hours. Id. Huntington would tell the drivers, "I'm sorry . . . you cannot pass overtime." Id. Buentello testified that Huntington would sometimes take the excess hours and move them forward to the next pay period to avoid paying overtime. Id.

Dominguez testified that during weekends when he was on-call, he would be called to deliver propane to a customer, but would not have the mobile device with him – it would be at the office. Dkt. No. 36-2, pp. 1-2. Dominguez would "go pick up propane from one customer and go deliver it to the other customer and replace it the following day to that

2

customer that I took propane out of." Id. In other words, he would take propane from a customer that had sufficient propane; deliver it to the customer who needed propane right away; and then go back the next day to replace the propane that was taken. Id. He said that his time was not recorded – because he didn't have the mobile device – and he was not paid for it. Id.

As part of their response to the motion for summary judgment, Buentello and Dominguez submitted time records from their mobile devices. Dkt. Nos. 36-5, 36-7. As to Buentello, the records show that from February 24, 2014, until February 28, 2014, Buentello worked 43 hours and 24 minutes. Dkt. No. 36-5.[2] However, the payroll records show that Buentello only worked 40 hours over those five days. Dkt. No. 36-4, p. 13.

As to Dominguez, the mobile device recorded him as working 8 hours and 41 minutes on November 14, 2013. Dkt. No. 36-7. It also showed him working 10 hours and 50 minutes on November 15, 2013. Id. Yet, the payroll records show Dominguez as working 8.25 and 9.5 hours over those two days, respectively. Dkt. No. 36-6, p. 7.

Huntington testified that he had the ability to change payroll time records in the system and is the person who "approve[s] all my employees' time" records. Dkt. No. 36-3, p. 9.

**B. Procedural History**

On November 22, 2015, Buentello and Dominguez filed a complaint in this Court, for unpaid overtime, pursuant to the FLSA. Dkt. No. 1.

On September 13, 2016, Ferrellgas filed a motion for summary judgment, pursuant to FED. R. CIV. P. 56. Dkt. No. 29. In its motion, Ferrellgas made three arguments: (1) the Plaintiffs were not entitled to compensation for time spent on-call when they were not working; (2) Plaintiffs were not entitled to compensation for any missed lunch breaks when

---

[2] On 2/24/14, Buentello worked 9 hours, 16 minutes; on 2/25/14, Buentello worked 8 hours, 42 minutes; on 2/26/14, Buentello worked 8 hours, 55 minutes; on 2/27/14, Buentello worked 8 hours, 29 minutes; and on 2/28/14, Buentello worked 8 hours, 2 minutes. Dkt. No. 36-5.

3

they failed to report that they had worked those hours; (3) Plaintiffs had failed to produce "definite and certain" evidence that they performed work for which they were not compensated. Id.

On December 2, 2016, Buentello and Dominguez filed a response brief. Dkt. No. 36. In that response, they assert that: (1) they have not sought any compensation for on-call time that was not spent working[3]; (2) that the inaccurate time records regarding lunches taken was done "at the insistence" of Huntington; and, (3) Ferrellgas's time records are inaccurate to such a significant degree that the Plaintiffs are not required to produce "definite and certain" evidence of the uncompensated work they performed. Id.

Ferrellgas did not file a reply brief.

## II. Applicable Law

### A. Summary Judgment

Summary judgment is appropriate when the moving party has established that the pleadings, depositions, answers to interrogatories, admissions, and affidavits – if any – demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue is "real and substantial, as opposed to merely formal, pretended, or a sham." Bazan v. Hidalgo Cnty., 246 F.3d 481, 489 (5th Cir. 2001). A material fact is one that might influence the outcome of the suit. Id. Accordingly, a "genuine issue of material fact exists where evidence is such that a reasonable jury could return a verdict for the non-movant." Piazza's Seafood World, L.L.C. v. Odom, 448 F.3d 744, 752 (5th Cir. 2006).

If "the nonmoving party will bear the burden of proof at trial on a dispositive issue," then "a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

---

[3] Given that the Plaintiffs expressly disclaim ever making any claim for compensation for time spent on-call at non-work locations, the motion for summary judgment as to this claim should be denied as moot.

"If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." Norwegian Bulk Transport A/S v. International Marine Terminals Partnership, 520 F.3d 409, 412 (5th Cir. 2008). The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. Id.

Additionally, the Court must review all evidence in the light most favorable to the non-moving party. Piazza's Seafood World, 448 F.3d at 752. Factual controversies must be resolved in favor of the non-moving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Murungi v. Xavier Univ. of La., 313 Fed. App'x. 686, 688 (5th Cir. 2008) (unpubl.) (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)). Thus, "in the absence of proof," the court cannot "assume that the nonmoving party could or would prove the necessary facts." Little, 37 F. 3d at 1075. Finally, "a court should not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment." Chacon v. Copeland, 577 Fed. App'x. 355, 360 (5th Cir. 2014) (unpubl.) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)) (internal quotations omitted).

### B. FLSA

The Fair Labor Standards Act states that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

"An employee bringing an action for unpaid overtime compensation must first demonstrate by a preponderance of the evidence: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the

FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." Johnson v. Heckmann Water Res. (CVR), Inc., 758 F.3d 627, 630 (5th Cir. 2014).

Federal law requires employers to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." 29 U.S.C. § 211(c). "[A]n employee who brings suit for unpaid overtime compensation bears the burden of proving, with definite and certain evidence, that he performed work for which he was not properly compensated." Reeves v. International Telephone & Telegraph Co., 616 F.2d 1342, 1351 (5th Cir.1980), implicit overruling on other grounds recognized in Heidtman v. County of El Paso, 171 F.3d 1038, 1042 n. 4 (5th Cir.1999). However, "where an employer keeps incomplete or inaccurate records, an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." In re Williams, 298 F.3d 458, 463 (5th Cir. 2002) (internal quotations omitted). "Once the employee carries his burden, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Id. (internal quotations omitted).

## III. Analysis

As previously noted, there are four elements to a FLSA unpaid overtime claim: (1) an employer-employee relationship; (2) that the employee engaged in compensable activities; (3) that the employer failed to pay the employee for those activities; and (4) the amount of overtime compensation due. Johnson, 758 F.3d at 630. The first element does not appear to be in dispute. Thus, the Court will focus on the remaining three elements. The second and third elements – the employees engaging in compensable activities and the employer failing to pay – are interrelated in this case and will be addressed together.

### A. Compensable Activities & Payment

Buentello and Dominguez have alleged that they (1) worked through their lunch breaks and (2) worked in excess of 40 hours per week without being paid overtime. Ferrellgas disputes these claims. The Court will address each in turn.

#### 1. Lunch Breaks

It is undisputed that the Ferrellgas delivery drivers had a one hour unpaid lunch break during their weekday work shifts. Dkt. No. 36-3, p. 7; Dkt. No. 36-1, p. 8. Buentello testified that he would clock out during that period, but kept working. Dkt. No. 36-1, p. 8. Buentello and Dominguez each testified that the only way they could timely complete all of their assigned stops was to work through lunch. Dkt. No. 36-2, p. 10; Dkt. No. 36-1, p. 8. When Buentello informed Huntington that he was unable to take his lunch because of how busy he was, Huntington replied, "Well, you know, if you didn't get a lunch, you didn't get a lunch." Dkt. No. 36-1, p. 12. Buentello testified that, with the mobile device, Ferrellgas management could see when he was with customers and could compare that to the time that he was clocked out for lunch. Id.[4]

Ferrellgas asserts that it is not required to pay Buentello for these hours because Buentello logged himself as having taken lunch, so Ferrellgas is entitled to rely on his time records. Ferrellgas notes that the employee handbook states that "falsification of your time record is a serious violation of company policy." Dkt. No. 29-4, p. 3.

"While an employer may not 'stand idly by' without paying an employee that he knows or should know is working overtime, an employee has a duty to notify his employer when he is working extra hours." Von Friewalde v. Boeing Aerospace Operations, Inc., 339 F. App'x 448, 459 (5th Cir. 2009). The employer has "the right to require an employee to adhere to its procedures for claiming overtime." Id. However, "an employee would not be

---

[4] Dominguez testified that he never clocked out for lunch, but kept working. Dkt. No. 36-2, p. 10. For that reason, the Court will not address – in this section – any claims that Dominguez may have had for unpaid work during lunch periods.

7

estopped from claiming additional overtime if the court found that the employer knew or had reason to believe that the reported information was inaccurate." Newton v. City of Henderson, 47 F.3d 746, 749 (5th Cir. 1995) (quoting Brumbelow v. Quality Mills, Inc., 462 F.2d 1324, 1327 (5th Cir. 1972)).

There is a genuine dispute of material fact as to whether Ferrellgas knew or should have known that Buentello was working through his lunch break and that his hours were incorrectly logged. Buentello testified at his deposition that he informed Huntington, his direct supervisor, that he was unable to take his lunch break. Dkt. No. 36-1, p. 12. When informed of this, Huntington was nonchalant and told him that if he didn't get to eat lunch, then he didn't get to eat lunch. Id.

Buentello testified that he clocked out for lunch when he was still working because "we know that [Huntington] . . . wouldn't pay the hour that I worked." Dkt. No. 36-1, p. 20. Buentello also testified that he had "several" conversations with Huntington about the issue. Id, p. 9.

Based upon this testimony, there is a genuine dispute of material fact as to whether Huntington knew or should have known that Buentello was working through his lunch break, despite being clocked out. Ferrellgas has focused on the fact that Buentello falsely reported taking a lunch break, in violation of company policy, and that it should be entitled to rely on his time records. Dkt. No. 29, pp. 9-13. While this may be the general rule, Ferrellgas has not addressed the evidence showing that Huntington was aware that Buentello was working through his lunch break.

In Newton, the Fifth Circuit rejected a claim that the police chief knew or should have known that an undercover officer was working uncompensated hours. Newton, 47 F.3d at 749. In that case, the only evidence showing the police chief's knowledge was that the chief of police was a former undercover officer and knew that undercover work often "requires an officer to work outside his scheduled hours." Id. However, there was no evidence in the record that the police chief specifically knew about the hours being worked by the plaintiff,

8

especially since the police chief specifically instructed the plaintiff to take flex time to compensate for any unscheduled hours. Id.

The key difference between this case and Newton is that Huntington apparently had specific knowledge that Buentello was working through his lunch break. In Newton, the knowledge of the uncompensated hours was based upon the type of work, which generally required more than 40 hours a week to perform, rather than any specific knowledge about the plaintiff's efforts during a defined period. In the instant case, there is evidence in the record that Huntington was informed of the unpaid work being performed during lunch. Accordingly, summary judgment is inappropriate and should be denied.

### 2. Excess Hours

Buentello and Dominguez have testified that they each worked in excess of 40 hours per week and that they were not paid overtime for the excess hours. Summary judgment regarding this claim is also not appropriate.

In addition to their deposition testimony, that they worked hours for which they were not paid, Buentello and Dominguez submitted time log sheets from their mobile device and payroll log sheets. Dkt. Nos. 36-5, 36-7. For both Buentello and Dominguez, there are obvious discrepancies between the hours that were logged by their mobile handheld device and the hours that were recorded in the payroll system. In every case, the payroll records show them working fewer hours than were recorded by the handheld system.

As previously noted, if an employer "keeps incomplete or inaccurate records," the employee meets his burden by showing "that he has in fact performed work for which he was improperly compensated and . . . he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." In re Williams, 298 F.3d at 463. Given the obvious discrepancies between the hours logged in the mobile handheld device and the payroll records, Buentello and Dominguez have shown that Ferrellgas's records are incomplete or inaccurate.

Because the records are incomplete or inaccurate, Buentello and Dominguez must

merely provide "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946). Buentello and Dominguez have met this standard.

Buentello and Dominguez have produced specific evidence and testimony of instances of uncompensated overtime. Cf. Ihegword v. Harris Cty. Hosp. Dist., 555 F. App'x 372, 375 (5th Cir. 2014) ("unsubstantiated and speculative estimate of uncompensated overtime does not constitute evidence sufficient to show the amount and extent of that work as a matter of just and reasonable inference."). Plaintiffs have produced instances where the mobile device logs clearly show that they worked more time than they were paid for. Buentello has testified to working through lunch with Huntington's knowledge. Dominguez has testified to working weekends on-call, without his mobile device, for which he was not compensated. There is sufficient evidence to create a "just and reasonable inference" of uncompensated work being performed.

Cases where the courts have not found a just and reasonable inference all differ in several important ways. See Von Friewalde v. Boeing Aerospace Operations, Inc., 339 F. App'x 448, 459 (5th Cir. 2009) (no inference when, on a few occasions over the course of a year, employees worked some small portion of an hour without compensation, creating a de minimis injury); Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 441 (5th Cir. 2005) (plaintiff provided "no factual allegations at all to substantiate her claim"); and Rosales v. Lore, 149 F. App'x 245, 246 (5th Cir. 2005) (only evidence of uncompensated hours were time records reconstructed by the plaintiff after his employment was terminated).

Given the finding that the records were inaccurate and because Plaintiffs have provided sufficient evidence of uncompensated work, the burden shifts to Ferrellgas to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Anderson, 328 U.S. at 687-88. Ferrellgas has not produced any evidence to meet this burden.

Because Ferrellgas has failed to meet its burden, summary judgment is inappropriate as to this claim and should be denied.

### B. Damages

The fourth element of a FLSA overtime compensation claim is for the plaintiff to produce evidence establishing the amount of overtime compensation due. Again, summary judgment is not appropriate.

As previously noted, Ferrellgas's records are inaccurate or incomplete and Plaintiffs have provided sufficient evidence to create a just and reasonable inference of work performed. Furthermore, Ferrellgas has not provided evidence to negate this inference.

In these circumstances, a plaintiff may be entitled to damages, "even though the result be only approximate." Anderson, 328 U.S. at 687-88. Thus, the amount of damages is an issue left for the trier of fact, after determining how many hours Buentello and Dominguez were not compensated for working. Cantu v. Milberger Landscaping, Inc., 12 F. Supp. 3d 918, 924 (W.D. Tex. 2014) (summary judgment not appropriate when there is a material question of fact as to the number of hours worked). Thus, summary judgment should be denied.

## IV. Recommendation

It is recommended that Ferrellgas's motion for summary judgment be denied, Dkt. No. 29.

### A. Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge. 28 U.S.C. § 636(b)(1) (eff. Dec. 1, 2009). Failure to file timely objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. See § 636(b)(1); Thomas v Arn, 474 U.S. 140, 149 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from

ten to fourteen days).

      DONE at Brownsville, Texas, on December 23, 2016.

                                                Ronald G. Morgan
                                                United States Magistrate Judge